## 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

### Rush's Exor. & Others v. Steele & Others.

#### September 17, 1896.

1. Trusts and Trustees—*Loss of Funds—Negligence.*—A trustee was directed by the court, in a pending suit, to lend the trust fund and take as security therefor a deed of trust or mortgage on real estate. He loaned the money as directed, but took as security therefor a confession of judgment, upon which execution issued, but, by the direction of the trustee, it was not placed in the hands of the proper officer to be levied, whereby the limitation on the judgment was reduced to ten years.· The investment by the trustee was reported to the court and confirmed, and three years after making the investment the trustee was removed, and the general receiver of the court substituted in his stead. The debt was amply secured, but was lost solely by permitting the judgment to become barred by the statute of limitations, after the substitution of the general receiver.

Held:

> The trustee is not liable for the loss, but the general receiver is. It was the duty of the general receiver to ascertain when the judgment would become barred, and to provide against that contingency, and there is nothing in the facts of this case to exempt him from the performance of that duty.

Appeal from a decree of the Circuit Court of Augusta county, pronounced May 23, 1895, in a suit in chancery, wherein J. C. Steele and others were the complainants, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*George M. Cochran,* for the appellant.

*Curry & Glenn,* for J. C. Steele and his children, appellees.

*Richard P. Bell,* for J. Fred Effinger, appellee.

BUCHANAN, J., delivered the opinion of the court.

By the will of John Churchman, he gave to his grandson, John C. Steele, about $9,000, to be held by his executors, as trustees, and invested in some safe and permanent interest-bearing fund, the interest only to be applied to the special use of his grandson during life, and after his death the fund was to pass to his distributees.

A suit was brought by the executors of the testator against his legatees, &c., to have his will construed by the court, and his estate administered under its direction. The executors of Churchman having declined to act as trustees of the fund devised to the grandson, the court, upon his request, appointed Wm. T. Rush to act as trustee for him. Rush qualified as such about the year 1871, and acted until the year 1883, when the court, by a decree entered in the case referred to above, removed Rush as trustee, at the instance of Steele, and upon his own request, because of the unfriendly relations which existed between them, and directed him to turn over the whole of the trust fund to the general receiver of the court. This was done. Among the debts turned over was one of $1,300, due by judgment. The general receiver took charge of the trust subject, and collected the interest thereon, and paid it over annually to Steele until the year 1891, when the principal debtor in the $1,300 judgment died. In taking an account of the indebtedness of his estate, it was ascertained that the judgment could not be collected, because it was barred by the statute of limitations.

The beneficiary, Steele, then instituted his suit against the executor of Rush, the trustee, who had in the meantime died, and against the general receiver, for the purpose of compelling one or the other of them to make good the loss

which the trust fund had sustained by the alleged misman-
agement.

There is no question that the $1,300 Lightner judgment
was lost by allowing it to become barred by the statute of
limitations, as the land upon which it was a lien was amply
sufficient for its payment.

The only question is which of the two fiduciaries is re-
sponsible for its loss.

The negligence charged against Rush, trustee, is that, in-
stead of obeying the decree of the court which directed him
to secure the trust fund when he invested it by taking a deed
of trust or mortgage on real estate, he secured the debt which
was lost by having the debtors to confess judgment upon
their indebtedness, and that he not only secured it by judg-
ment, when he ought to have secured it by deed of trust or
mortgage, but directed the clerk of the court not to place
the execution, which had been issued, in the hands of the
sheriff until further orders, and thus limited the lien of the
judgment to ten years, when, but for his direction, the lien
would have been twenty years. It was further alleged in
the bill that he represented to the general receiver when he
turned the trust fund over to him that an execution had been
issued upon the judgment, and such return made thereon as
would make it a lien upon the debtor's land for twenty years.
The executor of the trustee denies that there was any such
representation, and there is no proof whatever to sustain it.
The trust fund was invested under the direction of the court,
and in a pending cause to which all the parties interested
were parties. The trustee's account had been regularly set-
tled, and these settlements reported to the court and con-
firmed. They showed that the $1,300 loaned to Lightner
had been secured by a judgment lien, and not by a deed of
trust or mortgage, as the court had directed. The trustee
continued to act as such from the time the judgment was
confessed, in April, 1880, until October, 1883, when he turned

over the trust fund by order of the court to its general re-
ceiver.

It is admitted, and if it were not, it is clearly shown by
the record, that the Lightner judgment was, at the time it
was turned over to the general receiver, a well secured debt,
and so continued until the year 1890, more than six years
afterwards, and that it was lost, not because the property
upon which it was secured was not sufficient to pay it, but
solely from allowing it to become barred by the statute of
limitations.

It is true that, if the execution which was issued upon it
had gone into the hands of the proper officer (not the
sheriff in this case, because he was the judgment debtor),
and he had made a return thereon, the lien of the judgment
would not have been barred when it was asserted against the
estate of Lightner. Code of 1873, p. 1167, sec. 12. But
this was not done, nor is there any good reason why it
should have been done. The confession of judgment was
taken to secure a lien upon the debtor's lands. There was
no intention nor desire to collect the debt, nor to acquire a
lien upon the debtor's personal property. The lien of the
judgment, without execution, would continue for ten years
from its date, and the execution which was issued author-
ized other executions to be issued upon the judgment at
any time within ten years from its return day, without the
necessity of a *scire facias.* Code 1873, p. 1167, sec. 12; 4
Minor's Inst. (3rd Ed.) 985. And thus the lien of the
judgment could have been kept alive as long as was neces-
sary for the protection of the debt.

But granting that it was the duty of the trustee to have
an execution issued, and such return made upon it as would
have continued it in force for twenty years, under the facts
of this case, he could not be held responsible for the loss of
the Lightner debt. His investments were enquired into by

one of the commissioners of the court, and approved by it. The commissioner's report showed to whom the trust fund had been loaned, and how it was secured. The debt in controversy was described as a "Judgment vs. A. B. and C. A. Lightner, confessed $1,300." After stating how each debt was secured, he adds the "undersigned has examined all the foregoing investments made by Wm. T. Rush, trustee, and considers them safe and judicious.   *   *   *"   This report was confirmed, without exceptions, in the cause of Churchman ex'or. v. Churchman by a decree of the court, in which it stated that the "investments are approved as safe, solvent, and judicious." The trustee, Rush, lived until the year 1893, nearly ten years afterwards, and no question was ever made as to the Lightner investment until after his death.

The Lightner debt was solvent when the trustee, under the direction of the court, turned it over to the general receiver of the court. It continued so for more than six years. It was approved by the court as a solvent, safe, and judicious investment, and was lost at a time when he had no control over it.

To hold his estate liable for its loss under these circumstances would make the trustee responsible for a loss resulting from an investment which the court had approved, and which was not lost by any subsequent mismanagement or want of prudence on his part. This we do not think can be done.

The defence relied upon by the general receiver why he should not be held responsible for the loss of the debt is that he believed, and had the right to believe, when the trust fund was turned over to him, that an execution had been issued upon the judgment, and such return made thereon as would continue the lien of the judgment for twenty years, and that he did not learn that such was not the fact until after the judgment was barred. The grounds upon which he con-

tends that he had the right to believe that it was a twenty-year investment are that among the papers which he received from Rush, trustee, was a copy of a bond executed on the 2nd day of March, 1880, by Lightner, upon which was endorsed a memorandum in the trustee's handwriting that the original had been left with the clerk of the Circuit Court in order that the Lightners might confess judgment thereon; that he knew that Rush, trustee, was a very prudent, safe, and unusually careful business man; that Rush had informed him that a judgment had been confessed upon the Lightner bond very shortly after its date, which was a lien upon the lands of the judgment debtors, and made the investment perfectly secure; that he further understood that the judgment was in all respects regular, and that the same was, when turned over to him, in full force and vigor, and was forthwith enforcible and collectible; that he is advised that it is generally understood to be the constant and general practice of business men that where the plaintiff does not desire to press the immediate collection of his claim he causes execution to issue, and then within a year has the same returned to the clerk's office with a return thereon showing that the judgment is unsatisfied, and he is advised that common prudence dictates such a course in the case of an ordinary debt, and that where there is an investment of trust funds, for the security of which the judgment is intended to stand for a number of years, such a step is still more necessary and prudent, in fact the demand for it is imperative; that he had called the attention of the court to the fact that, as he had not made the investments of the Steele trust fund, he was unwilling to assume the slightest responsibility as to their present or ultimate solvency, and the court's attention was called to this in connection with the commissioner's report in order to unite and call the special and careful scrutiny and attention of the commissioner and of the court to said investments,

and they had pronounced them safe and judicious investments; and that the judgment debtor had promptly paid the interest upon it as it became due until his death in 1891, without intimating that there was any trouble or irregularity about the judgment.

When the trust fund was turned over to the general receiver, it was his plain duty, within a reasonable time, to inform himself as to the time when the several investments would become barred by the statute of limitations, so that he could do what was necessary to protect the fund from loss from that source. The original evidence of the Lightner judgment was not delivered to him. That was in the clerk's office of the Circuit Court of which he was the general receiver. There he could have ascertained with certainty whether an execution had been issued, and such return made thereon as would extend the lien of the judgment to twenty years. The reasons given by him for not making such an examination are entirely insufficient, in our opinion, to relieve him from responsibility for the loss of the debt. There was nothing in any or all of the facts relied on which showed that an execution had been issued and returned. Even if it were usual in such cases to have executions issued, placed in the sheriff's hands and returned, so as to extend the life of the judgment to twenty years (which was not proved and may well be doubted), he had no right to rely upon such a practice when the means of knowledge were at hand, and the facts could be easily ascertained.

We are of opinion that the Lightner judgment was lost to the trust fund by the failure on the part of the general receiver to exercise that degree of care and skill in its management which prudent men ordinarily exercise in the management of their own affairs, and that he should be required to make good the loss to the fund.

The decree of the Circuit Court holding the trustee responsible, must, therefore, be reversed, and the cause remanded to the Circuit Court, with direction to it to charge the general receiver with the Lightner judgment, and to require him to make good its loss to the trust fund.

*Reversed.*