FANNIE G. VILLARD et al., Respondents, v. FANNIE G. VILLARD et al., as Executors of HENRY VILLARD, Deceased et al., Respondents, and THE FARMERS' LOAN AND TRUST COMPANY, as Trustee under the Will of HENRY VILLARD, Deceased, Appellant.

Testamentary trustees — duty of trustees to keep trust funds invested in safe and income-producing securities — when trustee liable for loss resulting from depreciation of value of securities.

Testator directed his executors to pay over to the defendant trust company, in trust, a sum sufficient to pay his daughter and sister certain annuities. The will authorized the trust company to change the securities constituting the trust fund from time to time and permitted it to retain as a part thereof, so long as it thought fit, any bonds or other securities which belonged to him at the time of his death although the same might not be of such character as is permitted for investment by trustees by the general rules of law. The executors at the express request of the residuary legatees sold bonds and stocks belonging to the estate and invested part of the proceeds in stocks of two railroad companies, and delivered them, with some other stock owned by testator in his lifetime, to the trust company as part of the trust fund. The trust company accepted such stocks and retained them for a number of years, during which time the stock of one of the railroad companies became substantially worthless and the stock of the other company materially reduced in value, although at the time such stocks were accepted by the trust company they were of a market value sufficient to provide from the income thereof the annuities which testator directed to be paid. The trial court, whose findings are approved by the Appellate Division, found that with ordinary care the trust company, although it did not have actual notice, could have ascertained when it accepted the railroad stocks from the executors, that such stocks were not part of the securities owned by testator at the time of his death; that at all times after the delivery to and acceptance by it of the stocks of the railroad companies the trust company knew or could by the exercise of reasonable care have ascertained that the investment in said stocks was unsafe and insecure and was continuously growing more unsafe and insecure; and that it was negligent because it failed to sell such stocks within proper and seasonable time and reinvest

the proceeds thereof. *Held,* that the trust company from the time it took such stocks became answerable for the conduct of the trust fund; that the company was not entitled to assume as a matter of law that the stocks delivered to it by the executors were owned by the testator at the time of his death; and that for its negligence in retaining such stocks without inquiry or investigation as to their value, the trust company is chargeable for the losses caused by the depreciation thereof.

*Villard* v. *Villard,* 166 App. Div. 203, affirmed.

(Argued October 23, 1916; decided December 28, 1916.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 9, 1915, which affirmed a judgment of Special Term surcharging the account of the appellant herein as trustee under the will of Henry Villard, deceased.

The facts, so far as material, are stated in the opinion.

*Charles F. Brown, Frederick Geller* and *Edward H. Blanc* for appellant. The duty of constituting the trust funds contemplated by the sixth and seventh clauses of the will in the manner prescribed in the will devolved upon the executors. That duty could, under the terms of the will, only be performed by constituting such trust funds out of cash or securities owned by the testator at the time of his death. (*McLouth* v. *Hunt,* 154 N. Y. 179; *Monson* v. *N. Y. S. & T. Co.,* 140 N. Y. 498; *Bumstead* v. *Sanders,* 39 N. Y. S. R. 618; 139 N. Y. 641; *Griffen* v. *Keese,* 187 N. Y. 454; *Matter of Willets,* 112 N. Y. 289.) The executors have never constituted the trust funds contemplated by the sixth and seventh clauses of the will in the manner prescribed in the will. (*Brenham* v. *Story,* 39 Cal. 179; *Matter of Ryer,* 94 App. Div. 449; 180 N. Y. 532; *Matter of N. Y. Life Ins. & Trust Co.,* 86 App. Div. 247; *Matter of Wotton,* 59 App. Div. 584; 167 N. Y. 629; *Toronto General Trust Co.* v. *C., B. & Q. R. R. Co.,* 64 Hun, 1; 138

N. Y. 657; *Matter of Avery,* 45 Misc. Rep. 529, 549; *King* v. *Talbot,* 40 N. Y. 76; *Leitch* v. *Wells,* 48 N. Y. 585; *Adair* v. *Brimmer,* 74 N. Y. 539; *Deobold* v. *Oppermann,* 111 N. Y. 531; *Matter of Myers,* 131 N. Y. 409; *Warren* v. *Union Bank of Rochester,* 157 N. Y. 259; *Matter of Douglas,* 60 App. Div. 64; *Mills* v. *Hoffman,* 26 Hun, 594; *Lacey* v. *Davis,* 4 Redf. 402; *Matter of Reed,* 45 App. Div. 196.) The Farmers' Loan and Trust Company never until December 12, 1912, had any knowledge or notice, actual or constructive, of the fact that the Metropolitan Street Railway stock and Baltimore and Ohio Railroad preferred stock had not belonged to the testator but had been purchased by the executors; the trust company neither accepted, nor could legally accept, said stocks as component parts of the trust funds under the sixth and seventh clauses of the will; the trust company exercised due care, and was guilty of no negligence at the time of the delivery of said stocks to it by the executors; and the trust company is not liable for loss occurring through shrinkage in value of said stocks. (*Elterman* v. *Hyman,* 192 N. Y. 113; *Croft* v. *Williams,* 88 N. Y. 384; *Smith* v. *S. N. Bank,* 169 N. Y. 467; *Cocks* v. *Haviland,* 124 N. Y. 426; *White* v. *Sherman,* 168 Ill. 589; *Baker* v. *Levy,* 67 N. Y. 304; *Felt* v. *Heye,* 23 How. Pr. 359; *Claflin* v. *Lenheim,* 66 N. Y. 301; *F. N. Bank* v. *N. B. Bank,* 156 N. Y. 459; *Anderson* v. *Blood,* 152 N. Y. 285; *Cahill* v. *Seitz,* 93 App. Div. 105; *U. S.* v. *Detroit Timber & Lumber Co.,* 131 Fed. Rep. 668.) The executors must make good the trust estate in the hands of the trustee. Their purchase of the Metropolitan Street Railway and Baltimore and Ohio Railroad stock and other investments constituted conversions by them of assets of the estate, and their attempted appropriation of such purchases to the trust estate cannot be allowed them, but they are personally liable for their devastavit to the trustee, the trust estate and the trust beneficiaries. (*Matter of Foster,* 15 Hun,

387; *Matter of Myers*, 131 N. Y. 409; *Matter of Ryer*, 94 App. Div. 449; 180 N. Y. 532; *Matter of Maitland*, 81 App. Div. 633; *Matter of Niles*, 113 N. Y. 547; *Matter of Boyer*, 68 Misc. Rep. 6; *Hine* v. *Hine*, 118 App. Div. 585; *Diven* v. *Lee*, 36 N. Y. 302; *McLean* v. *Ladd*, 66 Hun, 341; *Baker* v. *Disbrow*, 18 Hun, 29; 79 N. Y. 631; *English* v. *McIntyre*, 29 App. Div. 439; *Matter of Knight*, 12 Cal. 200; *White* v. *Sherman*, 168 Ill. 589.) The residuary estate, whether in the hands of the executors or in the hands of the residuary legatees, and the residuary legatees individually, are liable for the reconstruction of the trust funds. (*Leitch* v. *Wells*, 48 N. Y. 585; *Bigelow* v. *Tilden*, 52 App. Div. 390; *Matter of Niles*, 113 N. Y. 547; *Warren* v. *Union Bank of Rochester*, 157 N. Y. 259; *English* v. *McIntyre*, 29 App. Div. 439, 446; *Monson* v. *N. Y. S. & T. Co.*, 140 N. Y. 498; *Rowe* v. *Lansing*, 53 Hun, 210; *Pierrepont* v. *Edwards*, 25 N. Y. 128; *Clason* v. *Lawrence*, 3 Edw. Ch. 50.) The trust company has been guilty of no negligence. It has been guilty of no breach of duty owed by it to any party and is in no wise liable for any loss which has accrued through the shrinkage in value of securities placed by the executors in the trust funds. (*Baucus* v. *Storer*, 89 N. Y. 1; *McCabe* v. *Fowler*, 84 N. Y. 314; *Hun* v. *Cary*, 82 N. Y. 65; *Adair* v. *Brimmer*, 74 N. Y. 539; *Roosevelt* v. *Roosevelt*, 6 Abb. [N. C.] 447, 453; *Atlantic Trust Co.* v. *Powell*, 50 N. Y. Supp. 866; *Crabb* v. *Young*, 92 N. Y. 56; *Hun* v. *Cary*, 82 N. Y. 65; *Holton* v. *W. R. R. Corp.*, 15 N. Y. 444; *M. R. R. Co.* v. *Arms*, 91 U. S. 489; *Duncklie* v. *Butler*, 30 Misc. Rep. 58; *Matter of Mer. Trust Co.*, 156 App. Div. 224; 210 N. Y. 83.)

*William M. Wherry, Jr.*, for plaintiffs, respondents. Retaining of stocks received from the executors not owned by Henry Villard, after reasonable opportunity to sell them without loss, was a breach of its duty by the

trustee, through which it became liable for the loss. (*Brigham* v. *Morgan,* 185 Mass. 2; *Rowe* v. *Bentley,* 29 Gratt. 756; *Matter of Wotton,* 59 App. Div. 584; *Mills* v. *Hoffman,* 26 Hun, 594; 92 N. Y. 181; *Matter of Cornell,* 110 N. Y. 351; *Rush* v. *Steele,* 93 Va. 526; *Matter of Burr,* 48 Misc. Rep. 56; *Matter of Hirsch,* 116 App. Div. 367; 188 N. Y. 584; *Matter of Hall,* 164 N. Y. 199.) The trustee was guilty of a breach of duty in retaining speculative stock on faith. (*Willis* v. *Sharp,* 113 N. Y. 586; *Thorn* v. *De Breteuil,* 179 N. Y. 78; *Matter of Hall,* 164 N. Y. 196; *Matter of Hirsch,* 116 App. Div. 367; 188 N. Y. 584.) When the trust company receipted for the fund and retained the securities " as an investment," the fund was constituted and it became liable to account for the same as the fund. (*Banks* v. *Taylor,* 10 Abb. Pr. 199; *King* v. *Talbot,* 40 N. Y. 76.)

*James Byrne* and *William R. Begg* for executors o Henry Villard, deceased, respondents. The delivery by the executors and the acceptance by the trust company of the securities in question constituted as between them, full payment and discharge of the legacies. (*Camp* v. *Smith,* 49 Hun, 100; 117 N. Y. 354; *Lane* v. *Albertson,* 78 App. Div. 607; *Matter of Burr,* 48 Misc. Rep. 56; *Pope* v. *Farnsworth,* 146 Mass. 339; *Forbes* v. *Allen,* 166 Mass. 569; *Van Middlesworth* v. *Van Middlesworth,* 32 Mich. 183; *Muldrow* v. *Mixson,* 89 S. C. 551; *Willingham* v. *Chick,* 14 S. C. 93; *Macy* v. *Mercantile Trust Co.,* 68 N. J. Eq. 235; *Stewart's Appeal,* 3 Watts & S. [Penn.] 476; *Hall* v. *Huford,* 2 Clark, 291; 4 Penn. L. J. 44; *Matter of Fischer,* 189 Penn. St. 179; *Mosley* v. *Floyd,* 31 Ga. 564; *State to use of Mitchell* v. *Conrad,* 1 Marv. [Del.] 417; *M'Teer* v. *Ferguson,* 1 Bay [S. C.], 112; *Kidd* v. *Porter,* 13 Ala. 91.) No duty was imposed upon the executors by the will of Henry Villard, with respect to the investment of the funds created by the sixth and seventh articles. This duty was simply to pay

the legacies therein provided. That duty they have fully performed. (*Ormiston* v. *Olcott,* 22 Hun, 270; *Matter of Burr,* 48 Misc. Rep. 56; *Laytin* v. *Davidson,* 95 N. Y. 263; *Phœnix* v. *Livingston,* 101 N. Y. 451; *Matter of Crawford,* 113 N. Y. 560.) The fact that the trust company did not know that the stocks in question had not been owned by the testator in his lifetime does not alter the effect of its acceptance of the stocks in payment of the legacies provided by the sixth and seventh articles of the will. (*Ormiston* v. *Olcott,* 22 Hun, 270; *Rush* v. *Steele,* 93 Va. 526; *Bescher* v, *State ex rel. Hammann,* 63 Ind. 302.) There was no fraudulent or intentional concealment by the executors of any fact with respect to the securities delivered to the trust company. (*Lexow* v. *Julian,* 21 Hun, 577; 86 N. Y. 638; *Sturm* v. *Boker,* 150 U. S. 312; *Ins. Co.* v. *Finney,* 178 U. S. 327; *Todd* v. *Pratt,* 149 App. Div. 459; *Bacon* v. *Bonham,* 27 N. J. Eq. 209; *Akin* v. *Kellogg,* 119 N. Y. 441; *Amherst College* v. *Ritch,* 151 N. Y. 282; *Matter of Lewis,* L. R. [2 Ch. 1914] 656; *Matter of Mackay,* L. R. [1 Ch. 1906] 25; 14 Halsbury's Laws of England, 262; *Appeal of Potter,* 56 Conn. 1.) The fact that the legacies were paid to the trust company in securities which the executors had themselves purchased with funds of the estate does not make the payment less conclusive upon the trust company. (*Lockman* v. *Reilly,* 95 N. Y. 64; *Matter of Foster,* 15 Hun, 387; *Sildner* v. *McCreery,* 75 Md. 287; *Michigan Home Missionary Soc.* v. *Corning,* 164 Mich. 395; *O'Brien* v. *Jackson,* 167 N. Y. 31; *Railroad Co.* v. *Gilbert,* 44 Hun, 201; *Matter of Weisenbach,* 3 Dem. 145; *Camp* v. *Smith,* 49 Hun, 100; 117 N. Y. 354; *Matter of Fischer,* 189 Penn. St. 179; *Moseley* v. *Floyd,* 31 Ga. 564; *Stewart's Appeal,* 3 Watts & S. [Penn.] 476; *Hall* v. *Hurford,* 2 Clark, 291; *State* v. *Conrad,* 1 Marv. [Del.] 417; *McTeer* v. *Ferguson,* 1 Bay [S. C.], 112; *Kidd* v. *Porter,* 13 Ala. 91.) The loss in the trust estates was not caused by the purchase of the stocks in question by the execu-

tors, nor by their acceptance by the trust company. It was caused by the trust company's retention of the stocks and its negligence in the management of the trusts. The trust company, therefore, must make good the loss. (*Matter of Wotton*, 59 App. Div. 584; 167 N. Y. 629; *Mills* v. *Hoffman*, 26 Hun, 594; *Matter of Cornell*, 110 N. Y. 351; *Rush* v. *Steel*, 93 Va. 526; *Lockhart* v. *Reilly*, 39 Eng. L. & E. 135; *Matter of Carpenter*, 45 Hun, 552; *Matter of Butler*, 1 Connolly, 58; *King* v. *Talbot*, 40 N. Y. 76; *Ormiston* v. *Olcott*, 22 Hun, 270.)

*Frederick E. Mygatt* and *Raymond Lowes* for Helen V. Bell et al., respondents. The accounts of the trustee were properly surcharged. (*King* v. *Talbott*, 40 N. Y. 76; *Thompson* v. *Remsen*, 27 Misc. Rep. 279; *Mills* v. *Hoffman*, 26 Hun, 594; Chaplin on Trusts & Powers, 178.)

CHASE, J. Henry Villard died November 10, 1900, leaving a will which was duly probated December 29, 1900, and his widow, Fanny Garrison Villard, his friend, Horace White, and his late private secretary, Charles A. Spofford, were duly named as executrix and executors and qualified as such. The will, so far as now material, provides as follows:

"*Sixth.* I give and bequeath to my daughter Helen, an annuity or yearly sum of six thousand dollars, to be paid to her in equal quarterly installments from the time of my death during her natural life, the first of such installments to be paid to her at the expiration of three months next after my death, and in order to provide for such annuity I direct that the Executors of this my will hereinafter named as soon as practicable after my death, set apart a sum of money or securities to an amount or of value in their judgment amply sufficient to provide from the annual income thereof the sum of six thousand dollars in each year over and above all taxes, charges,

commissions and expenses lawfully chargeable against or in respect of the said fund or the income thereof, and transfer, deliver and pay over the same to the Farmers' Loan and Trust Company of New York, to which company I give and bequeath the same to be had and holden by the said Company and its successors in the trust, as Trustee, in trust during the natural life of my said daughter Helen, to invest and keep invested the same, with power to call in and change the investments thereof from time to time and to collect and receive the income thereof, and after paying thereout all lawful expenses and charges, to pay to my said daughter the said sum of six thousand dollars free from all deductions, in each year during her natural life in equal quarterly installments as aforesaid; and until such sum or fund shall be set apart, transferred and delivered to the said The Farmers' Loan and Trust Company of New York as aforesaid I direct that such annuity be paid by the Executors of this my will out of the general income of my estate; and I direct that if in any year the net income of the sum or fund set apart to provide such annuity shall be insufficient to pay the full amount of such annuity the Trustee for the time being of such trust, shall make up and pay the deficiency out of the capital of the said trust fund; and I direct that any and all surplus income of the said fund in any year, after the full payment and satisfaction of the said annuity, shall be paid by the Trustee for the time being of the said trust to the persons to whom by the twenty-first article of this my will I have given and bequeathed my residuary estate in the like shares in which I so give and bequeath to them my residuary estate and I give and bequeath such surplus income to them accordingly; and upon the death of my said daughter I direct that the Trustee for the time being of the said trust, convey, transfer, deliver and pay over the capital of the said trust estate or fund, with all gains, and increase of capital, if any, to such of my sons Oswald Villard and Harold Villard as

shall survive my said daughter and the issue who shall survive my said daughter of such of them as shall have previously, died in equal shares, *per stirpes,* and not *per capita.*"

*Seventh.* (The testator gave and bequeathed to his sister Emma, the wife of Lieutenant-General von Xylander of the city of Munich in Bavaria, an annuity or yearly sum of twenty thousand reichmark. The gift is made in exactly the same language and upon exactly the same trusts provided in his gift to his daughter Helen, as quoted, except that the final clause directs that after the death of his sister the trustee for the time being of the said trust " convey, transfer, deliver and pay over the capital of the said estate or fund with all gains and increase of capital thereof, if any, to the persons to whom, by the twenty-first article of this my will, I give, and bequeath my residuary estate and in the like shares in which I so give and bequeath to them my residuary estate and I give and bequeath the same to them accordingly.")

" *Twenty-third.* I hereby will and declare that the executors of this my will may in their discretion retain unsold for so long as they shall think fit, any and all stocks and bonds and other securities and other personal property or assets which shall belong to me at the time of my death and not by this will specifically bequeathed, and for any loss resulting from any such retention such executors shall be in no wise liable or responsible.

" *Twenty-fourth.* I hereby will and declare that the trustees or trustee for the time being of any trust by this my will created may in the discretion of such trustees or trustee retain as investments of the trust estate or fund for so long as such Trustees or trustee shall think fit any bonds or other securities belonging to me at the time of my death which may be received by such trustees or trustee from the executors of this my will as part of the trust estate or fund although the same may not be of such

character as is permitted for investments by Trustees by the general rules of law, and I do hereby will and declare that investments and reinvestments of moneys at any time belonging to or forming part of any trust estate or fund by this my will created may be made by the Trustees or trustee for the time being of such trust in bonds or stocks of the United States or in bonds of any State or of any City in the United States or in bonds secured by first mortgages on real estate in the United States or in first mortgage bonds of any railroad or railway company, or in productive real estate situated within the United States and for any loss resulting from any investments so made the Trustees or Trustee making the same shall not be liable or responsible."

The testator gave one-half of his residuary estate to his wife, and one-fourth each to his two sons. He left a personal estate amounting to about $3,000,000 of which about $530,000 was in cash. A gift by the will to his wife of $250,000 was paid to her in cash, January 10, 1901, and a gift to his son Oswald of $50,000 was paid December 30, 1901, partly in cash and partly in securities. Substantially all of his gifts to institutions and persons other than as provided by said paragraphs six and seven of the will and of the residuary estate were paid by the executors by January 7, 1902.

The deceased's indebtedness other than a claim of one Wetmore aggregated about $34,000. One Wetmore presented a claim against the estate of several hundred thousand dollars. The executors attempted to compromise such claim but were unable to make a settlement for several years. The claim was finally settled in 1910 for $5,000. In March, 1901, the residuary legatees delivered to the executors a letter the material part of which is as follows:

" We hereby request you to sell as many of the bonds belonging to the Estate as can be disposed of to advantage at the present market prices and to invest the pro-

ceeds arising therefrom in the following named and such other dividend paying stocks as you deem safe:

" * * *

"Baltimore & Ohio, .... Preferred

" * * *

" Metropolitan Street Railway.

" * * *."

The executors and executrix in compliance with such request prior to March 3, 1902, sold bonds and stocks belonging to the estate at the market price and purchased other stocks, paying therefor in the aggregate $1,028,528.42. Included in the stocks so purchased was five hundred shares of the Metropolitan Street Railway Company, and one thousand shares of the Baltimore and Ohio Railroad Company preferred stock.

On or prior to January 9, 1902, one of the executors went to the Farmers' Loan and Trust Company and there talked with its secretary and told him what securities the executors proposed to place in the trusts provided by the sixth and seventh paragraphs of the will and asked if the securities proposed were satisfactory and he was told by the secretary that such securities would be satisfactory for said trusts. On the 9th day of January, 1902, the executors delivered to said Farmers' Loan and Trust Company a letter the material parts of which are as follows:

" In compliance with the direction contained in Article Sixth of the last will and testament of Henry Villard, deceased, a copy of which we have furnished you, we herewith deliver to you:

"Five hundred (500) shares of the preferred capital stock of the Milwaukee Electric Railway and Light Company, Certificates Nos. A 46— 47— 48— 49— 50—, all registered in the name of H. Villard; and five hundred (500) shares of the capital stock of the Metropolitan Street Railway Company certificates Nos. 16,336, 17507, 8-9-10, all registered in the name of C. A. Spofford;

"to be held by you as Trustee for the purposes of the trust, thus created. We have paid to the beneficiary under this trust viz. Mrs. Helen V. Bell, Bergstrasse 38, Dresden, Germany, all quarterly instalments of the annuity provided for, up to and including November 12, 1901. The next quarterly instalment, therefore, will be due February 12, 1902.

"A quarterly dividend upon the shares of the Metropolitan Street Railway Company has been declared payable January 15th, upon receipt of which I will send you a check for the amount.

"Please sign and return to us the accompanying form of receipt and oblige. * * *."

With said letter the stocks as therein mentioned were delivered to said trust company and it gave to the executors a receipt of which the following is a copy:

"Received from Fanny Garrison Villard, Executrix and Horace White and Charles A. Spofford, Executors of the last Will and Testament of Henry Villard, deceased, five hundred (500) shares of the preferred capital stock of the Milwaukee Electric Railway & Light Co. certificates Nos. A 46/47/48/49/50, all registered in the name of Henry Villard and five hundred (500) shares of the capital stock of the Metropolitan Street Railway Co. Nos. 16,336, 17,507, 17,508, 17,509, & 17,510, all registered in the name of C. A. Spofford, to be held by this company as Trustee under the Sixth Clause of the Will of said Henry Villard."

A similar letter was delivered to the trust company relating to the trust for the benefit of Madame Von Xylander, except that the stocks therein mentioned and therewith delivered consisted of 550 shares of the Milwaukee Electric Railway and Light Company and 500 shares of the preferred stock of the Baltimore and Ohio Railroad Company.

The trust company delivered to the executors a receipt similar to the one given to them relating to the trust for

the benefit of the testator's daughter Helen. The stocks of the Milwaukee Electric Railway and Light Company so delivered were owned by Henry Villard at the time of his death. The stocks of the Metropolitan Street Railway Company and of the Baltimore and Ohio Railroad Company were a part of the stocks purchased by the executors in compliance with the requests made to them by the residuary legatees. The stock certificates of the Metropolitan Railroad Company and the Baltimore and Ohio Railroad Company were all dated subsequent to the death of Henry Villard and were in the individual name of the executor Spofford.

The value of the stocks so delivered for the trust for the benefit of the testator's daughter Helen, at the time of the delivery, was about $142,000, and of the stocks so delivered for the benefit of Madame Von Xylander, was about $114,000. A large part of said stocks have been retained by the trust company without change. The stocks of the Metropolitan Street Railroad Company have become wholly or substantially worthless and the stocks of the Baltimore and Ohio Railroad Company were at the time of the accounting materially reduced in market value.

The trust company did not have actual notice that the stocks of the Metropolitan Street Railway Company and the Baltimore and Ohio Railroad Company did not belong to Henry Villard at the time of his death until November 12, 1912. The executors did not have a settlement of their account prior to the accounting in this action. In October, 1911, the plaintiffs, the residuary legatees, brought this action to compel an accounting by the executors and the Farmers' Loan and Trust Company as trustee under the sixth and seventh provisions of said will, "and that this court ascertain, determine, adjudge and declare what amounts are due and owing and properly payable to the plaintiffs as residuary legatees under the said Last Will of Henry Villard deceased; and that

the provisions of the said Will of Henry Villard deceased, in respect to the amounts above mentioned be construed as to the right intent and meaning thereof, and the rights and duties of the Trustees, Executrix and Executors thereof, and of the parties to this action be determined and declared."

The court at the trial found:

"X. The said 500 shares of the capital stock of the Metropolitan Street Railway Company had at the time of the delivery thereof by the executors to the Trust Company as aforesaid a market value of $164 per share, and the said shares of the capital stock of the Metropolitan Street Railway Company could have been sold during four months next after the delivery of said shares to the Trust Company as aforesaid for a sum in excess of $82,000.

"XI. The said stock of the Metropolitan Street Railway Company at the time of the said delivery thereof and for more than a year prior thereto, had regularly paid dividends at the rate of seven per cent per annum, and at the time of said delivery said shares of the stock of the Metropolitan Street Railway Company produced an annual income of $3,500. * * *

"XII. The said five hundred (500) shares of the pre ferred capital stock of the Milwaukee Electric Railway and Light Company and the five hundred (500) shares of the capital stock of the Metropolitan Street Railway Company were accepted by the Trust Company in full payment, satisfaction and discharge of the bequest made to the Trust Company by the sixth paragraph of said will, and were at the time of such delivery of a value amply sufficient to produce the sum of $6,000 in each year over and above all taxes, charges, commissions and expenses lawfully chargeable against or in respect of said fund or the income thereof, and were in the judgment of the executrix and executors of a value amply sufficient for such purpose.

" XVII. Said five hundred and fifty (550) shares of the preferred capital stock of the Milwaukee Electric Railway and Light Company and five hundred (500) shares of the preferred capital stock of the Baltimore & Ohio Railroad Company were of a value amply sufficient to provide from the income thereof the sum of 20,000 reichsmark in each year over and above all taxes, charges, commissions and expenses lawfully chargeable against or in respect of the said fund or the income thereof, and were in the judgment of the executors amply sufficient for such purpose, and the said shares of stock did at said time and for long prior thereto provide an income in excess of 20,000 reichsmark over and above all the taxes, charges, commissions and expenses lawfully chargeable against or in respect of said fund or the income thereof. * * *

"XXVI. The Trust Company at the time of the delivery to and acceptance by it of said shares of the capital stock of the Metropolitan Street Railway Company and said shares of the preferred capital stock of the Baltimore & Ohio Railroad Company by the exercise of ordinary care could have known that neither said stocks nor either of them were owned by the testator at his death.

"XXXIII. The Trust Company at all times after the delivery to and acceptance by it of said shares of the capital stock of the Metropolitan Street Railway Company knew or could by the exercise of reasonable care have ascertained that its investment in said shares of stock was unsafe and insecure and was continuously growing more unsafe and insecure.

"XXXIV. Six months from and after the acceptance thereof by the Trust Company was a reasonable time within which to sell said shares of stock of the Metropolitan Street Railway Company and said shares of the preferred stock of the Baltimore & Ohio Railroad Company and reinvest the proceeds thereof and said shares of stock could by the exercise of ordinary care have been sold and

disposed of in the open market during said period of six months at prices of $164 per share for said shares of stock of the Metropolitan Street Railway Company and $96 per share for said shares of the preferred stock of the Baltimore and Ohio Railroad Company.

. " XXXV. The Trust Company as such trustee was guilty of negligence in retaining as an investment of the trust created by the Sixth paragraph of said will said 500 shares of the capital stock of the Metropolitan Street Railway Company and in failing to sell the same and reinvest the proceeds thereof.

" XXXVI. The loss of the value of said 500 shares of the capital stock of the Metropolitan Street Railway Company and of the principal of the trust created by the Sixth paragraph of said will was caused by wrongful retention by the Trust Company of said shares as an investment of the trust created by the Sixth paragraph of said will and by the negligence of the Trust Company in retaining said shares and in failing to sell the same and reinvest the proceeds thereof.

" XXXVII. Said 500 shares of the preferred capital stock of the Baltimore & Ohio Railroad Company have since May 1, 1902, depreciated in value to the extent of $3,500 and have caused a loss in the principal of the trust created by the Seventh paragraph of said will of $3,500.

" XXXVIII. Said loss in the principal of said trust created by the Seventh paragraph of said will was caused by the wrongful retention by the Trust Company as an investment of said trust of said 500 shares of the preferred capital stock of the Baltimore & Ohio Railroad Company by its failure to sell said shares and reinvest the proceeds thereof.

" XXXIX. During the year 1902 safe investments could by the exercise of ordinary care be secured in first mortgage bonds of railway companies and in first mortgages on real estate in the United States to yield not less than $4\frac{1}{2}\%$ on the amount so invested."

32

The court charged the appellant with the losses to said trusts arising from depreciation of the stocks in the Metropolitan Street Railway Company and in the Baltimore and Ohio Railroad Company. It was not by statute authorized to hold said stocks as a part of the trust funds. Its authority by will is stated in the twenty-fourth paragraph thereof quoted.

In the voluminous briefs presented to us herein much is said about the respective duties of executors and trustees. It is only necessary to consider the duties of each so far as such consideration is essential for the purpose of determining whether the judgment herein should be sustained.

While the primary duty of an executor is to convert the assets of an estate into cash and pay the debts of the testator and the gifts and bequests provided by the will, it may be necessary, or at least prudent in many cases, to hold all of the assets of the estate until a distribution thereof pursuant to a decree upon a judicial accounting, and it may also be desirable or even the duty of an executor to invest uninvested funds in his possession as executor during such time, and in any case circumstances may arise which may make it desirable or the duty of an executor to change the investments of the testator as in case of palpably unsafe investments, or those reasonably certain to depreciate in case they are held. (*Dunscomb* v. *Dunscomb*, 1 Johns. Ch. 508; *Ormiston* v. *Olcott*, 84 N. Y. 339; Ruling Case Law, vol. 11, 143.) It is not, therefore, entirely correct to say that an executor as such has no authority to make investments.

It appears by the twenty-third paragraph of the will that the testator appreciated that the executors except for the authority therein given, might be required in the performance of their duty to sell, during the continuance of their duties as executors, some of the stocks, bonds and other securities held by him at the time of his death. That knowledge by the testator necessarily included an

appreciation of the possibility that the proceeds of the bonds and stocks and other securities so held might have to be reinvested. Even the provision in the will relating to holding investments owned by the testator at the time of his death did not wholly relieve the executors from care and responsibility regarding such investments. (*Matter of Hall*, 164 N. Y. 196.)

Our statute provides in detail in what securities an executor, administrator, trustee or other person holding trust funds may invest. (Decedent Estate Law [Cons. Laws, chap. 13], § 111.)

If an executor disregards the provisions of the will or a rule of law relating to investments, he takes the risk of any loss that may result, without the right to any profit that he may make by reason of such investment. (*Holden* v. *N. Y. & Erie Bank*, 72 N. Y. 286; *Adair* v. *Brimmer*, 74 N. Y. 539.)

It is optional with beneficiaries of the estate to hold the personal representative liable for the amount of funds that he has invested improperly or to accept the investment as made. (*King* v. *Talbot*, 40 N. Y. 76.)

The executors in this case made investments that are not authorized by statute. They were made pursuant to the express request of the residuary legatees and they retained in their hands as executors sufficient of cash and securities held by the testator at the time of his death to pay all of the gifts provided by the will, other than those to residuary legatees. In doing so under the circumstances disclosed the securities thus purchased were at least presumptively held by them for the estate and not personally and the residuary legatees were estopped from asserting any personal liability against them or either of them in case of a loss. (Ruling Case Law, vol. II, p. 142.) Their liability to establish the trusts provided by the will were not affected by their acts pursuant to the request of such residuary legatees.

The testator did not in express terms provide that

the trusts should be set apart to the trust company in cash or in securities owned by the testator at the time of his death. The direction is " That the executors * * * set apart a sum of money or securities to an amount or of value in their judgment amply sufficient to provide from the annual income " an amount sufficient to pay the sums provided by the testator to be paid in accordance with the sixth and seventh paragraphs of the will respectively. The trust company doubtless could have insisted that the executors deliver to it either cash or securities owned by the testator at the time of his death or such securities as are named in the will or as are prescribed by section 111 of the Decedent Estate Law. The only express limitation on the securities to be set apart for the trust funds is that they with the " sum of money " included therewith shall be " of value in their (executors') judgment amply sufficient to provide " the required income. The executors were of course bound to act in good faith in exercising their judgment.

A legacy or other payment pursuant to a direction in a will is ordinarily payable in cash, but it does not prevent any other form of payment which is acceptable to the payee. (*Camp* v. *Smith*, 49 Hun, 100; affirmed, 117 N. Y. 354.)

There can be no reasonable doubt that if the trust company accepted the stocks as stated knowing that some of them were owned by the testator in his lifetime and some were not owned by the testator in his lifetime it would have so accepted them as investments for the trust funds and become responsible for them as investments made by it as of the time of the acceptance of the trust funds respectively.

We do not find any evidence of collusion between the executors and the residuary legatees. The executors after a conference with the residuary legatees each apparently in good faith desirous that an amount amply sufficient to provide an income to the testator's daughter and sister

as provided in the sixth and seventh paragraphs of the will should be set apart, concluded to submit to the trust company the stocks mentioned for its approval and acceptance. It is not claimed that the executors intentionally and in bad faith refrained from telling the appellant that part of the investments proposed were not owned by the testator at the time of his death. The appellant does claim, however, that it was the duty of the executors to make such statement to it, and that because they did not make such statement the trust funds should be deemed never to have been formed, and the court should now direct that an amount be taken from the residuary estate to make good the loss occasioned by the depreciation in the Metropolitan Street Railroad Company and the Baltimore and Ohio Railroad Company stocks. The whole claim of the appellant depends upon its assertion that it had a right, *as a matter of law*, to assume that all stocks submitted to it by the executors to make up the trust funds were stocks owned by the testator at the time of his death.

The trust company in its brief says: " This is the crux of the whole decision as to the liability of the trust company. The court will find upon reflection and analysis that everything else in the case bearing upon the trust company's liability carries back to this one point."

The estate of Villard was solvent. The value of the stocks at the time they were accepted by the trust company was amply sufficient to provide an income to the testator's daughter and sister as provided by the will. Such stocks were then in good repute and dividends thereon were regularly paid. In placing them in the trust funds the executors were not attempting to carry out some scheme, device or purpose. The executors did not foist the stocks upon the trustee. The stocks in question at the time they were accepted and receipted for by the trustee were of a market value sufficient with the other stocks to constitute a fund as directed by the testa-

tor, and such stocks continued of such or of greater value for some time thereafter, and could have been sold by the trustee even at a material profit over the market value thereof at the time when they were received by it. · There was no possible purpose, therefore, in the executors in attempting to deceive the trust company or to induce it to take the stocks in setting apart the trust funds.

It is not to be assumed that the trust company with all its experience was unwittingly and innocently deceived into accepting the stocks in question. It is rather to be inferred that the trust company did not at the time of the acceptance of the trust funds consider whether the stocks in question had been owned by the testator in his lifetime.

So far as there was presented to it any facts affecting the question whether the Metropolitan Street Railway Company and the Baltimore and Ohio Railroad Company stocks were purchased before or after the testator's death such facts tended to show that they were subsequently purchased because the certificates presented to it for the Milwaukee Electric Railway and Light Company stocks which were owned by the testator at the time of his death remained in his name unchanged, while the certificates for the Metropolitan Street Railroad Company and the Baltimore and Ohio Railroad Company stocks were dated subsequent to the death of the testator and were in the individual name of one of the executors.

It also appears that there had been a proceeding to determine the amount of the transfer tax to which the trust company was a party and the papers in that proceeding showed that the testator did not own any stock in the Metropolitan Street Railway Company or in the Baltimore and Ohio Railroad Company at the time of his death.

The trust company knew, or could have known, that the executors had made investments from the cash remaining in their hands or from the proceeds of investments owned by the testator at the time of his death, or

even that as the estate was solvent they had made a change of investments in obedience to the wishes of those interested in the residuary estate.

The executors on their part, in paying the amount to the trust company, were dealing with a corporation making a specialty of trust matters, and very familiar with the authority of executors and trustees and as to trust investments, and no special duty was owing by them to it. The payment to the trust company without expressly calling to its attention the fact that the Metropolitan Street Railroad Company and the Baltimore and Ohio Railroad Company stocks were not owned by the testator at the time of his death, did not amount to a fraudulent concealment by the executors as the trustee had ample opportunity to make any investigation thereof that it deemed or should have deemed advisable. (*Long v. Warren*, 68 N. Y. 426.) Not a question was asked in behalf of the trust company in regard to the investments when it was given an opportunity in advance of the delivery of the stocks to express its approval or disapproval of the securities proposed to make up the trust funds. It doubtless could then have had the trust funds set apart in cash if a suggestion to that effect had been made. Instead of that the appellant expressed itself as satisfied with setting apart the trust funds as proposed. If the appellant assumed that its liability was restricted because of the provisions of the will that have been quoted in regard to holding the stocks owed by the testator at the time of his death, it was an assumption without inquiry or investigation, and the trial court has found as a fact that such assumption was unwarranted.

It is said by the Appellate Division herein that "An inquiry would have been a simple act of prudence required by the measure of care owed by the trustee in the discharge of its duties." So it seems to us. In a solvent estate like the one now under consideration it should not be assumed that no new investments have

been made. (*Ormiston* v. *Olcott,* 22 Hun, 270.) It was not the care of an ordinarily prudent man to continue to hold the investments without inquiry or further investigation. (*Rush* v. *Steele,* 93 Va. 526.)

The stocks were at the time they were received by the trust company of a market value sufficient to produce an income ample to pay the amounts to be paid to the testator's daughter and sister as provided by the will. That was the important consideration. The trust company from that time became answerable for the conduct of the funds. (*Matter of Wotton,* 59 App. Div. 584; affd., 167 N. Y. 629.) The trust company was not bound to retain them. The loss resulted entirely from continuing to hold the securities named. It was the trust company that determined to retain the securities in the trust funds. We agree with the courts below that the trust company was not entitled as a matter of law to assume that the stocks delivered to it were owned by the testator at the time of his death.

The court has found against the appellant on all questions of fact. We have quoted the most important of them, and there is some evidence to sustain each of such findings. The proposed findings to the contrary which the court refused were not established by uncontradicted evidence. We are bound by findings when supported by some evidence. (*Ostrom* v. *Greene,* 161 N. Y. 353; *Costello* v. *Costello,* 209 N. Y. 252.)

The findings of fact so supported by evidence require an affirmance of the judgment, with costs.

HISCOCK, COLLIN, CUDDEBACK, HOGAN and POUND, JJ., concur; WILLARD BARTLETT, Ch. J., not sitting.

Judgment affirmed.