DETERMINED IN THE

# FIRST DEPARTMENT

AT

GENERAL TERM,

## June, 1888.

---

JAMES W. CAMP, as Executor, etc., of MARY ETTA CAMP, Respondent, *v.* JAMES W. SMITH, Appellant.

*Payment of a legacy by an executor, by the delivery and acceptance of notes to some of which the executor is a party — extinguishment of the claim against the estate and the executor as such.*

In this action, brought to recover from the defendant moneys alleged to have been had and received by him for the use of the plaintiff's testatrix, it appeared that William Smith died, leaving a will in which the defendant was named as executor. and by which a legacy of $10,000 was given to the plaintiff's testatrix; that thereafter the defendant, acting as executor, gave to the plaintiff's testatrix three notes. one made by himself, one made by the firm of which he was a member, and one made by a third person, for which the plaintiff's testatrix gave to the defendant a receipt, for the aggregate of the notes, "on account of the legacies to me directed, to be paid by the will of said William Smith."

Subsequently the defendant filed with the surrogate an account of his proceedings. as executor, setting forth his payment to the plaintiff's testatrix of an amount equal to the aggregate of the several notes above mentioned.

After a hearing upon exceptions filed to this account it was found by the auditor appointed by that court that the defendant's testatrix had received a certain sum. being the aggregate of the notes above mentioned, which payment was in part not due, and a decree was entered settling the accounts and directing the sale of certain real estate, out of the proceeds of which the legacy to the plaintiff's testatrix was to be paid. This real estate was subsequently sold. and the defendant, as sole acting executor, rendered his final account, upon which proceeding the plaintiff's testatrix appeared by counsel, and a decree was made directing the

payment of an additional sum to the plaintiff's testatrix, "in full of her share of the residuary estate of the said testatrix, distributable upon this accounting," which amount was subsequently paid by the executor.

*Held,* that in this transaction James W. Smith, individually, was not a debtor of the plaintiff's testatrix; that the estate of William Smith was the debtor, and it was to cancel the debt of William Smith's estate that the notes above referred to were given.

That if any of the creditors of the estate chose to take securities other than money in payment of their claims, it was a matter between them and the executor, and if they chose to receive notes of the executor, of the executor's firm, or of his brother, for their claims, no further claim, because of the indebtedness of the estate, existed against the defendant, either individually or as executor, except such as might rest upon the provisions of the notes.

APPEAL by the defendant from a judgment entered on the report of a referee.

*Eugene H. Pomeroy,* for the appellant.

*William Mitchell,* for the respondent.

VAN BRUNT, P. J.;

This action was brought to recover from the defendant the sum of $14,230.18, moneys had and received by the defendant, to and for the use of the plaintiff's testatrix, and which the defendant promised to pay to said testatrix. It is true that the complaint contains various other allegations leading up to the one in question. But it is this allegation which has been supported by the referee in his report, and upon which the same is founded, and it is, therefore, not necessary to consider the other allegations contained in the complaint, which seem to be only allegations of evidence upon which is based an allegation of fact that the defendant had received, to and for the use of the plaintiff's testatrix, the sum of money mentioned. The allegations in the complaint referred to were denied by the answer, and also the plea of the statute of limitations was set up. The facts, as found by the referee, appear to be these: William Smith, the father of the defendant, and of Mary Etta Camp, the plaintiff's testatrix, died in the fall of 1875, leaving a last will and testament, which was admitted to probate, and on November fourth the defendant and Mrs. Camp qualified as executor and executrix thereof. By his will Mrs. Camp was given a legacy of $10,000 and a third of the residuary estate. On Decem-

ber ninth, the defendant, acting as executor, gave to Mrs. Camp three notes; one made by himself, individually, for $2,887.89, one made by the firm of J. W. & W. F. Smith, of which the defendant was a member, for $1,188.36, and one made by Wilbur F. Smith for $573.93, in part payment of the legacy to her above mentioned to her. Mrs. Camp gave to the defendant, as executor, for the notes, a receipt in the following language:

"Received, New York, December 9, 1875, from James W. Smith, executor, etc., of William Smith, deceased, the sum of $4,645.18, on account of the legacy to me directed to be paid, by the will of said William Smith, deceased.

"$4,645.18.              (Signed)        MARY E. CAMP."

Being the aggregate amount of the three notes above mentioned. On the 5th of June, 1877, the defendant made another payment on account of said legacy, which payment was made by delivering to Mrs. Camp a note made by the defendant, individually, for $3,400, and a note made by said firm for $1,185, and received from Mrs. Camp a similar receipt. On the 28th of July, 1877, the defendant, as executor, made a third payment to Mrs. Camp on account of said legacy, of $4,000, such payment being made by a note of the defendant's firm, and Mrs. Camp gave a similar receipt.

On the 18th of March, 1878, the defendant, as executor, made a fourth payment of $1,000 to Mrs. Camp on account of this legacy, which payment was also made by delivering a note of the defendant's firm for that amount, and Mrs. Camp gave a receipt in substantially the language above mentioned. The defendant testified, upon the trial, that he told her that he had no money and he gave her the notes.

On the 6th of January, 1879, the defendant filed with the surrogate an account of his proceedings as executor, wherein he claimed, that on the date of the said receipts he had paid to Mrs. Camp the several sums in the receipts mentioned. Thereafter, upon the petition of certain parties interested under said will, the defendant and said Mary E. Camp were required to file their account with vouchers in support thereof. Exceptions were taken to such account and a hearing was had before an auditor, who, on the 5th of August, 1880, reported, among other things, that the said Mary E. Camp had

received from the executor and executrix the sum of $14,230.18, being the aggregate of the payments above mentioned, which payment was, in part, not due, and that, up to the date of said report, not more than the sum of $7,500 was properly or legally payable to her under said will.

This report was confirmed by the surrogate, and, on November 15, 1880, a decree was entered settling and allowing the said account, as filed and adjusted, and directing the sale, by said executors, within the time limited, of certain real estate, out of which the said legacy of $10,000 was to be paid to Mrs. Camp, and also directing that, after such sale, the said executor and executrix be permitted and allowed to file a further and supplemental account and apply to this court for a final decree in this matter.

In August, 1881, the defendant, as sole acting executor, rendered his final account, showing a sale of the real estate above referred to, and the payment to Mrs. Camp of $6,730.18, being part of her legacy under the will and not allowed on the former decree as prematurely paid. Upon this accounting, counsel appeared for Mrs. Camp, as executrix, and also as specific and residuary legatee. The case was heard before an auditor, whose report was substantially confirmed by a decree dated October 5, 1883. By this decree the executor was credited with the sum of $2,500 as the balance of the specific legacy given by the will to Mrs. Camp, and her share of the residuary estate was settled at $4,726.53, against which the defendant was allowed a credit of $4,230.18, prematurely paid to her as above stated, and that the defendant pay to her the further sum of $496.35 which the decree declared " will be in full of her share of the residuary estate of said testatrix distributable upon this accounting." This payment was subsequently made by the executor.

It is stated by the learned referee that the contention, upon the part of the defendant's counsel before him, was that the question whether the legacies due to Mrs. Camp were paid is *res adjudicata* by the surrogate's decree, and that if this action had been brought for the legacies it would necessarily fail; that the decree settled that all of Mrs. Camp's claims against the estate of William Smith and against the defendant, as executor, have been fully satisfied; but that the defendant is not sued in his representative character, nor is it sought to hold him liable for any acts done, or defaults

suffered by him as executor, but that it is the individual liability of the defendant which the plaintiff is seeking to enforce.

And he found the right of the plaintiff to recover anything upon his conclusion that the result of the transaction was that Mrs. Camp had made a loan of this money to the defendant Smith as an individual, and that she accepted his personal responsibility in lieu of the responsibility of the estate to her, for the amount of these legacies. In this we think the referee erred. He has been led to this conclusion because of the identity of the defendant and the sole acting executor, under the will of William Smith, deceased, which estate was indebted, if its assets were sufficient, to Mrs. Camp for the amount of her legacy. It is found, by the decrees of the learned surrogate, that all claims on the part of Mrs. Camp or her representatives against the estate of her father, have been paid and satisfied, and this is in entire accordance with the facts. But how had they been paid and satisfied? She has accepted in payment of this legacy certain notes, some of them the individual notes of James W. Smith, some of them the notes of the firm of J. W. & W. F. Smith, and one note of W. F. Smith. She had received these evidences of indebtedness in payment of her claims upon the estate and had thus relieved the estate from any claim which she had against it.

It is clear that if the executor had given to Mrs. Camp notes of other parties which he owned, under the same circumstances, there could have been no claim against James W. Smith, either as an individual or as executor, and this seems to be conceded by the referee when he allows a credit of the amount of the note of W. F. Smith. Why, upon the same principle, he should not have been allowed credit for the notes of the firm of which he was a member, we cannot perceive. The transaction is in no respect a loan of money by Mrs. Camp to James W. Smith, nor does the transaction bear the construction sought to be placed upon it by the cause of action she has sued upon, namely, that James W. Smith had received the amount of this legacy from the estate, for and to the use of Mrs. Camp. There is no pretense that that was the form of the transaction. James W. Smith had paid these legacies by notes which he gave, by other and additional security from that which Mrs. Camp had, because her claim was only against the

·estate and not against Smith as an individual, and it was by the giving of these notes that there first arose a claim upon Mrs. Camp's part against either James W. Smith, or the firm of J. W. and W. F. Smith or Wilbur F. Smith. There is no original indebtedness due from either of the makers of these notes, which can be resorted to and the claim upon the notes abandoned. The first time that the indebtedness against the makers of these notes sprang into existence, was when the notes were delivered to and received by Mrs. Camp in payment of her claim against the estate of William Smith.

If there was a substitution of credit, it was done by means of these notes, and in no other way. It is entirely true that the delivery to a creditor of a debtor's own note has never been deemed a satisfaction of the debt, even when expressly agreed to be received as payment. But in the application of this principle the learned referee has overlooked the fact that James W. Smith was not a debtor of Mrs. Camp. It was the estate of William Smith which was the debtor, and it was to cancel the debt of William Smith's estate to Mrs. Camp that the notes of James W. Smith, his firm and his brother were given. The fact that James W. Smith was the executor of the estate of William Smith, and may be said to have had sufficient assets in his hands to pay the claim against the estate of William Smith in full, in no manner alters the question. That fact did not make him individually a debtor of the creditors of the estate. He was bound, undoubtedly, to satisfy the creditors of that estate out of the assets of the estate, but when he had done that his obligations as executor were discharged. If any one of these creditors of the estate, or claimants against the estate, chose to take other securities than money, that was a matter between them and the executor; and if they chose to receive notes of the executor's firm and of his brother, it seems to be clear that no further claim because of the indebtedness of the estate existed against James W. Smith, either as executor or individually.

The same is equally true of that part of the claim against the estate which was discharged by his own individual notes. The ·estate owed Mrs. Camp so much money. The executor admitted ·that he had assets sufficient to pay that claim. He offers her his

individual note for the amount, and she accepts it, and discharges the executor and the estate from all claims. There is no further obligation upon the part of the executor to pay. There is no obligation on the part of the individual to pay, except because of his promise as contained in his promissory note. This is the origin of his individual liability. It first sprang into existence by the delivery and acceptance of the notes, and has nothing behind it which can be reached disregarding the notes. We think, therefore, that this action, not being brought upon the notes in question, no cause of action whatever was made out against James W. Smith.

But, assuming that this is not so, the referee has found that, to the extent of the note of Wilbur F. Smith, James W. Smith was discharged upon the theory that other and additional security had been given, which had been received in payment of the indebtedness. This ruling equally applies to the notes of the firm of J. W. and W. F. Smith, because the security of a third party was received by Mrs. Camp in payment to the extent of those firm notes. She had no claim on W. F. Smith. On receipt of these notes by her, he became her debtor to the amount of the notes to the same extent that he became her debtor upon the individual note which she received ; and if the receipt of the one canceled the obligation to that extent, so necessarily must the receipt of the note which bears the name of a third party operate to the same extent. These notes were given at the time of the payment and come distinctly within the rule laid down by the referee, that it is only where the delivery of the note of a third person is coincident with the creation of the debt, that the law presumes it was taken in payment. Therefore, under no circumstances could Mrs. Camp have any claim for money had and received, except to the extent of James W. Smith's individual notes. The evidence shows conclusively that James W. Smith has paid more than sufficient to cancel these obligations.

It is true that these payments were made without any application thereof, either by James W. Smith, at the time of making them, or by Mrs. Camp, at the time of their receipt. But, under the principle which has been recognized in a case recently decided brought by the present plaintiff against the firm of J. W. and W. F. Smith, these payments being made by James W. Smith, individually, must necessarily be credited first upon the individual indebtedness of Smith..

These payments, therefore, having more than extinguished this. individual claim, and the copartnership debt being outlawed, there was no cause of action existing in the name of the plaintiff.

The judgment should be reversed, and new trial ordered, with costs to the appellant to abide the event.

BRADY and BARTLETT, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.