In the Matter of the Estate of ELIZABETH C. PACKARD, Deceased.

Surrogate's Court, New York County, November 28, 1932.

66

*Hunt, Hill & Betts*, for the remaindermen.

*Morris Douw Ferris*, successor, trustee.

*Lockwood & Lockwood* [*Davis, Polk, Wardwell, Gardner & Reed* of counsel], for the ancillary executors.

FOLEY, S. The ancillary executors of the estate of Edward W. Packard, deceased trustee of certain trusts created under the will of the testatrix, are accounting in this proceeding for his acts as such trustee. The trustee was the husband of the testatrix and the life beneficiary of the trusts. The remaindermen were two sisters of the testatrix, Mrs. Ruth S. Kidder and Mrs. Moses H. Douglass. The latter survived the trustee but has since died. The trusts terminated by the death of the trustee on October 27, 1928. The testatrix died on February 25, 1907. At the date of her death her estate was of the approximate value of $8,500. During the course of his trusteeship, through investments in stocks of smelting companies, which yielded a return of seven per cent the trustee succeeded in increasing the value of the estate to a considerable extent. On October 24, 1927, he sold all the stock and reduced the trust funds to cash, realizing the sum of $14,374.92. Out of said proceeds he invested, on December 22, 1927, $14,000 in a participation of a mortgage of $17,000, maturing March 1, 1931, covering premises 179 Clinton street, New York city. The mortgagor of the premises has since defaulted in the payment of the principal of the mortgage and the interest thereon.

The surviving sister and the administrator of the deceased sister, as well as the successor trustee of the trusts, have filed objections to the account. They complain that the investment by the deceased trustee in the participation of the mortgage was an illegal investment, under section 21 of the Personal Property Law and section 111 of the Decedent Estate Law. They seek to surcharge his estate for the depreciation which has resulted in this investment. It is not disputed by the accountants that the investment of trust funds in a participation in a mortgage of this character is not the

type of investment authorized by law. They contend, however, *First,* that the trustee of this estate was not limited by the terms of the will to investments in so-called "legal securities," and *second,* that the remaindermen approved of and accepted the investment in the mortgage and should be bound thereby.

In the first contention of the accounting representatives I find no merit. There is nothing in the language of the will of the testatrix which permits the investment of the trust funds in non-legal securities. I hold, however, that the remaindermen are estopped from challenging the illegality of the participation in the mortgage, because by their own acts and conduct they acquiesced in and consented to the original investment by the trustee. The evidence discloses that no accounting was ever sought by the remaindermen or rendered by the trustee during the twenty-year period of his administration of the trusts. No objection was at any time made by them to the investments of the funds in the smelting stocks, which were unquestionably illegal. In fact, such investments inured to their benefit. Although under the terms of the will the trustee was himself the sole beneficiary of the trusts and entitled to the income, he gave and paid over to the remaindermen the entire income as it became due during his lifetime. As a result of his generosity each one of the remaindermen admittedly received almost $7,000. Subsequent to his death in 1928 they continued to receive the income until January 30, 1931. About a week after the investment in the mortgage participation, on December 29, 1927, one of the attorneys for the trustee wrote to each of the remaindermen, Mrs. Kidder and Mrs. Douglass, advising them that Mr. Packard had instructed him " to inform you that he has placed the Trust Fund from which you and your sister have been receiving the income, in my hands to hold the investment and to pay over the income in equal parts to your sister and yourself.

" At present the fund consists of $14,437.02 of which $14,000 is invested in a participation in a mortgage covering the premises #179 Clinton Street, New York City, which bears interest at 6% payable March and September first, so that there will be payable on those dates to your sister and yourself each $210.00. The income will be slightly increased by the investment of the present uninvested balance.

" If acceptable to you, the interest will be remitted as received which will be approximately on the dates above mentioned, but if you would prefer quarterly remittances, rather than semi-annual, I should be glad to arrange payments to meet your convenience. * * * "

In reply Mrs. Kidder, under date of January 3, 1928, wrote as

follows: " I am in receipt of your letter of December 29, in which you inform me of the changes in investment made in the Trust Fund of Mr. Packard.

" I think you have made the matter clear and my sister Mrs. Douglass says she has received a similar letter.

" We shall be interested to hear of the investment of the small balance."

After the death of Mr. Packard, in response to a letter from the same attorneys giving detailed information as to the interest of the estate in the mortgage, Mrs. Kidder, under date of December 14, 1928, replied as follows: " I thank you for your favor of the 28th of November, and under the circumstances, feel disposed to continue the investment of the mortgage which you now hold, and which you state becomes due March 1, 1931."

There is in evidence no further correspondence between the parties relative to the mortgage until some time in the early part of 1931, when the unforeseen decrease in real estate values, due to the economic depression which had then set in, made it apparent that there was little likelihood of the mortgage in question being paid. The subsequent default in the payment of the mortgage is the cause of this litigation. The silence of the remaindermen during the long period of the administration of the trusts, the failure to inquire into or object to the non-legal investments made, and the accord of the remaindermen in the mortgage participation, as evidenced by the letters here quoted, establish complete acquiescence on the part of the remaindermen in the mortgage participation investment and the retention thereof. (*Matter of Garvin*, 256 N. Y. 518, modfg. 229 App. Div. 803; *Matter of Hall*, 164 N. Y. 196; *Matter of Niles*, 113 id. 547; *Hine* v. *Hine*, 118 App. Div. 585; *Matter of Chaves*, 143 Misc. 868; *Matter of Jarvis*, 110 id. 5, 16.) Nor is there any evidence of deception or fraud practiced upon the remaindermen by the deceased trustee which may be made the basis of a surcharge against his estate for the loss sustained. While there is some evidence that the participation was stated by the attorneys for the estate of the deceased trustee to have been in a $22,000 consolidated mortgage rather than in a $17,000 mortgage, it appears that it had no influence upon the remaindermen's acquiescence in the retention of the mortgage participation. On the contrary, it is apparent from the correspondence in evidence that the consent of the remaindermen to the retention of the investment was due to their confidence and feeling that the trustee was acting for their best interests. Unfortunately, the financial depression and the consequent break in real estate market values were the direct cause of the impairment of the investment. It should be noted also that the trusts had termi-

nated in October, 1928, by the death of the life tenant, who happened also to be the trustee. The objectants as remaindermen were then entitled to possession of the securities within the trusts. They appeared to have acquiesced in the retention of the mortgage participation by the firm of attorneys in behalf of the objectants in their individual ownership. In other words, the attorneys then became the managers of the individual property of the remaindermen. The mortgage participation did not remain in the hands of the ancillary executors of the deceased trustee's estate. This situation continued for over two years, and the current interest up to the time of default was collected and paid over to the remaindermen under their individual rights. It would be harsh to exact a liability against the deceased trustee's estate under these circumstances, which continued with the acquiescence of the objectants here.

In *Matter of Garvin (supra)*, where the executors were surcharged for the amount lost by an infant beneficiary through their failure to sell stock in the estate within a reasonable time, the court said: " Towards the widow, who was a beneficiary of the trust fund, and who acquiesced in, if indeed she did not encourage retention of the securities, failure to sell was a misfortune, not a wrong." The remaindermen here having chosen to consent or with knowledge having failed to object to the investment until after the mortgage became due, they cannot now be heard to complain of the consequences. (*Matter of Niles*, and cases cited *supra*.)

With respect to the reservation by the representatives of the deceased trustee of the sum of $200 out of the trust funds to cover possible legal charges, the objections thereto will be overruled and that amount credited against a bill of costs when taxed by the accountants.

Commissions will be allowed to the estate of the deceased trustee, one-half for receiving and one-half for paying out the funds in his capacity, as executor, and one-half for receiving, as trustee. (Surr. Ct. Act, § 285; *Matter of Ziegler*, 168 App. Div. 735.)

Submit decree on notice overruling the objections and settling the account accordingly, and authorizing the transfer to the remaindermen of the participation in the mortgage by appropriate instruments.