In the Matter of the Estate of ALEXANDER FRAZER, Deceased.

Surrogate's Court, New York County, December 9, 1933.

*Avery & Whiting,* for the trustee, The New York Trust Company, petitioner.

*Thompson, Koss & Warren,* for the objectant, Mary E. Thompson.

DELEHANTY, S. This account is that of a trust company, organized under the laws of the State of New York, which is acting as trustee of testamentary trusts created by the will of deceased. The filed objections, similar in form, criticize a number of the investments reported by the trustee and may be summarized as follows:

(a) That the investments were not proper, reasonable or prudent.

(b) That they were not permitted by the will.

(c) That they were not legal.

(d) That they were made by the trustee at its own risk and that the latter is liable for all losses.

(e) That the trust funds should have been invested so that cash would have been available within a reasonable time after the death of the life beneficiary.

(f) That the investments were not liquid nor readily convertible into cash and that there is no market for them.

(g) That the corpus of the trust as received by the trustee contained no similar investments and that the trustee was negligent in having invested all the trust funds in a single and undiversified type of investment.

Consideration of certain of these objections requires recital of the history of legislation which is relied upon by the accounting trustee to justify the class of investment criticized.

By chapter 385 of the Laws of 1917 the Banking Law was amended by the addition to the then existing subdivision 7 of section 188 of the following: " Investments in bond and mortgage by any such corporation as executor, administrator, guardian, personal or testamentary trustee, receiver, committee or depositary may be

made by apportioning to any estate or fund held by such corporation in any of such capacities a part interest in a bond and mortgage held by or in the name of such corporation, individually or in any representative capacity, and any such part interest may be repurchased at its face value by such corporation individually or in any representative capacity; but such bond and mortgage shall be a legal investment for trustees under the laws of this state and the records of such corporation shall at all times show every interest in the said bond and mortgage and any part interest in such bond and mortgage so apportioned shall at all times be and remain at least equal in lien to any other interest therein and such corporation shall promptly notify each person of full age and sound mind entitled to the income therefrom of the fact that such investment has been made. Any moneys of any such estate or fund awaiting investment or distribution may be held on deposit by such corporation in its own name, subject to the provisions of subdivision eleven of this section; provided that appropriate entries showing the share or interest of each such estate or fund in the moneys so held on deposit shall at all times, appear upon the records of such corporation."

This legislation definitely authorized a trust company to hold in its individual name the funds of estates awaiting investment or distribution. It required that appropriate entries should appear upon the books of the banking institution showing the shares or interest of the respective estate or fund in the moneys so deposited. It also authorized investments in fractional interests in a bond and mortgage held by such banking corporation either individually or in any representative capacity. It required the bond and mortgage to be of a type legal for investment of trust funds and further that the record of the banking corporation should disclose every interest in the bond and mortgage so purchased and that every interest therein should be on a parity with every other. It further required that the corporation should notify each person of full age and sound mind who was a participant in income therefrom that the investment of this type had been made.

By chapter 544 of the Laws of 1918, section 111 of the Decedent Estate Law and section 21 of the Personal Property Law were amended. Theretofore the authority for the investment of trust funds provided by the sections cited limited such investments to securities lawful for savings banks and to bonds and mortgages on unincumbered real property worth fifty per cent more than the amount loaned. The legislation of 1918 added a new category of permissible investments, to wit, " shares or parts of such bonds and mortgages," but required that each share or part should be on a parity with every other, that all guaranties and other instru-

ments relating to the investment should be held by " a trust company or title guaranty corporation organized under the laws of this state," for the benefit of the investing fiduciary and any other persons interested, and that the corporation holding these instruments should issue and deliver to each person interested a certificate evidencing the deposit. This legislation required such depositary corporation to keep proper records of certificates issued and authorized the investing fiduciary to exact additional personal bonds or guaranties and to pay out of income upon such investments as a service charge not more than one-half of one per cent per annum on the par value thereof.

By chapter 599 of the Laws of 1922, section 21 of the Personal Property Law was amended by putting a limitation upon the continuance of an investment in shares of a savings and loan association. The section was otherwise left unchanged.

By chapter 604 of the Laws of 1925, section 111 of the Decedent Estate Law and section 21 of the Personal Property Law were amended so as to enlarge the list of authorized depositaries to include " a bank authorized to conduct a trust department " as well as a trust company and a title guaranty corporation theretofore authorized. The sections otherwise were left unchanged.

By chapter 307 of the Laws of 1926, section 111 of the Decedent Estate Law and section 21 of the Personal Property Law were amended so as to further enlarge the authorized depositaries to include " a national bank located in this state and duly authorized to act as a trustee therein." The sections otherwise were left unchanged.

By chapter 362 of the Laws of 1928, section 111 of the Decedent Estate Law and section 21 of the Personal Property Law were again amended so as to eliminate the statutory reference to investments in shares of a savings and loan association and to substitute therefor the authorization of a more limited type of such investment. The sections otherwise were left unchanged.

By chapter 623 of the Laws of 1932, section 111 of the Decedent Estate Law and section 21 of the Personal Property Law were further amended to provide that a fiduciary who theretofore or thereafter " lawfully invested any trust funds in a share or part of a bond and mortgage " was authorized broadly to handle the interest so acquired co-operatively with others in interest in the same mortgage or property. The precise text of these additional powers of management is not here especially pertinent.

By chapters 320, 321 and 323 of the Laws of 1933, section 21 of the Personal Property Law, section 111 of the Decedent Estate Law, and subdivision 7 of section 188 of the Banking Law,

respectively, were amended. In the case of the Banking Law the amendment gave to a banking corporation authority to collect for all concerned the principal and interest due on a mortgage investment wherein there were participations and to pay over to the parties in interest the amount so collected. General power was given the banking corporation to foreclose and take any other measure necessary to protect the investment. Power was given also to modify the terms of the mortgage so as to extend its time of payment for a limited period on consent of interested persons holding participations of a total value equaling at least a stated minimum percentage of the whole. Such right of extension reserved to non-assenting participants an opportunity to object to such extension and to pursue certain remedies more particularly stated in the section, and not here pertinent. In the case of section 21 of the Personal Property Law and section 111 of the Decedent Estate Law, the enactment of the cited chapters in large part made changes in terminology only but made some additions of phrases clarifying the powers of fiduciaries in respect of such investments and also in express terms declared the existence of rights in the matter of handling such investments in foreclosure or when in need of recasting.

The foregoing history of legislation dealing with this type of investment evidences a legislative policy which furnishes a standard by which the propriety of investments of this type may be tested. The initial legislation referred to (Laws of 1917, chap. 385) was enacted in the legislative session immediately following the decision in *Matter of Union Trust Co. (Hoffman Estate)* (219 N. Y. 514), decided in December, 1916. The opinion in the cited case contains some strictures because of the manner in which the trust company there involved held the funds. There was criticism too of the manner in which the investment itself had been handled. The 1917 legislation was confined to an amendment of the Banking Law, but it was followed the next year, as stated, by legislation enlarging or clarifying the powers of estate fiduciaries and of trustees of living trusts in respect of such investments. Thereafter the whole progress of the legislation was designed to improve the mechanics of the handling of the type of this investment, the propriety and legality of which was both explicitly and implicitly recognized.

As early as 1885 the Court of Appeals had said in respect of executors: " It was entirely within their power, if it was not their duty, in case a profitable investment offered itself larger in amount, than the available assets of the estate, to supplement them with other funds, if they could be legitimately obtained from other parties." (*Barry* v. *Lambert*, 98 N. Y. 300.)

In *Matter of Union Trust Co.* (*supra*) the court said (p. 519): " The advantages that are frequently to be secured by combining trust funds to make a large and more satisfactory investment than can be made of the funds of one trust without combination are of sufficient importance and value to the several trust funds to overcome any disadvantage that may arise from the fact that the several owners of the investment may thereafter differ in the matter of handling the same. Trust funds have been from time to time combined for investment with satisfactory results and the practice is generally recognized as proper for a trustee."

The idea expressed in the last quoted excerpt was an idea widely accepted among institutions handling vast sums of money normally invested in large part in real estate mortgages. The economic development which substituted large units in corporate or multiple ownership for the small project individually owned required as a corollary multiple contributions to the financing necessary for these larger projects. The legislative plan comprehended individual fiduciaries and banks both in their fiduciary and in their banking capacity. It was recognized that banking institutions could render service in such financing both as depositaries and as contributors through their trust departments of the money or some of the money required. It does not at all affect the legislative authority for this type of investment to learn, as the community has in recent years, that gross abuses in practical operation of banks and others existed in respect thereof.

This court in *Matter of Thomson* (135 Misc. 62) passed explicitly upon the legality and validity of this type of investment of trust funds and held affirmatively that such investments are lawful. The attention of the court has been called to *Matter of Gambrill* (135 Misc. 516) in which is a dictum by the surrogate who presided indicating that he viewed such investments as legal. So, too, in *Matter of Adriance* (145 Misc. 345) investment in mortgage participation certificates was approved even though in the cited case the property upon which the mortgage was a lien was incomplete and did not meet the requirements of the statute for investments by fiduciaries. Subsequently and before the hearing on the judicial settlement of the account the building was completed in conformity with original representations and the court held that such completion validated investments which at the time of purchase were invalid. Again, in *Matter of Blake* (*John*) (146 Misc. 776) the validity of this type of investment was assumed, and in *Matter of Blake* (*Sarah*) (146 Misc. 780) such investment was specifically held valid. Mr. Surrogate WINGATE there said: " It is, of course, unquestionable that the Legislature in the enactments referred to [*i. e.*, Dec. Est.

Law, § 111; Pers. Prop. Law, § 21] has authorized fiduciaries to invest in the classes of securities particularly specified."

*Matter of Flint* (148 Misc. 474*) is urged by objectant as authority fully supporting her position. Any views expressed by the distinguished surrogate who presided in the cited case are entitled to great weight. His whole opinion indicates that the ultimate result reached by him was predicated upon " special and distinct facts " on which he determined the liability of the accounting executor trustee (p. 481). If that result was predicated upon fact situations singular to the case before him, the discussion of legal principles may not have affected the decision reached and hence may be considered obiter. Objectant seizes upon certain excerpts from the opinion as basis for asserting that under subdivision 7 of section 188 of the Banking Law an investment in this type of security by a banking institution is at the sole risk of such institution and that the trustee is liable for losses thereon irrespective the reason therefor. This court holds that the objection so taken is not sustainable on such grounds. Any objection predicated upon alleged illegality of such investment (because of its type only) or predicated upon the theory that a trustee making this type of investment may do so lawfully but thereby becomes insurer of the investment, is insufficient as matter of law. Such objections are dismissed.

Objection is made also that the investments here criticized were not permitted by the terms of the will of deceased. The will authorized the trustees to accept any securities purchased by decedent in his lifetime and then directed that any reinvestment be confined to securities " in which trustees are permitted to invest under the laws of the State of New York." Objectant's legal theory is that the will did not authorize this type of investment because this type of investment was not lawful. The objection on this score is likewise dismissed, for the reasons above stated at large.

Objectant further asserts that the investments are not and were not liquid nor readily convertible into cash and that there is and was no market for them. In support of her position objectant cites *Matter of Flint* (*supra*) and *Matter of Blake* (*Sarah*) (146 Misc. 780). In so far as any language in either of the cases cited indicates that the legality of this type of investment is dependent upon a ready market for the participation certificates this court is not willing to express its concurrence therewith. In its very nature a mortgage investment is a stable permanent investment. The legality and propriety of a mortgage investment was never determined by the salability for cash of the bond and mortgage prior to its due date. Indeed it is to be doubted if ever there could be

---

* Revd., 240 App. Div. 217.

created a cash market for the vast body of mortgage investments currently made. Investments of this type are liquidated either by payment when due or by refinancing through the same or a different lender. The investor therein does not contemplate dealing in the bond and mortgage as a negotiable or readily salable security. It is true that when there developed a method of multiple contributions to large loans and of the issuance of certificates evidencing such participations there grew up a sort of over-the-counter market in such certificates, but the intrinsic nature of the transaction remained the same. It was still a placing out of funds at interest in a long term investment secured by improved property which in the experience of financial institutions, individuals and courts had been recognized for generations as the most stable form of security. Such investments were not predicated upon a current day-by-day market for the certificate evidencing it. Though evidenced by a certificate the investment was the same in all aspects as if the certificate holder held the bond and mortgage itself. The basic idea behind a mortgage loan on improved property is that it will be immune to the fluctuations characteristic of readily salable securities. Stability and not liquidity is the desideratum in such an investment. Properly selected investments of this type have for generations furnished security of income and of principal not surpassed and probably not equalled by any other type of security. Even government securities have in times of stress shown greater variances in capital value. In so far, therefore, as objection is made that the investments were and are not liquid nor readily convertible into cash, and that no market exists or existed for the certificates evidencing the investment, the court holds the objection insufficient in law and dismisses it.

In making the rulings hereinabove respecting the legality of the type of investment here in issue the court has not in any wise trenched upon the rule which holds fiduciaries to a high standard of responsibility for the exercise of prudence, foresight and good faith. Nor has the court ruled that merely because an investment falls within the category of " legals " a fiduciary may rely upon that fact alone to justify the investment. The rule in *King* v. *Talbot* (40 N. Y. 76) is still the rule of liability for fiduciaries. As was said by Mr. Surrogate FOWLER in *Matter of Randolph* (134 N. Y. Supp. 1117, at p. 1120; affd., 150 App. Div. 902): " In this court trustees should be held to the highest standard, not the lowest." Even when the investment is made in a security authorized by law a fiduciary must be prepared to meet proof that in the particular instance the investment was improper, imprudent and unreasonable. (*Durant* v. *Crowley*, 197 App. Div. 540; affd., 234 N. Y. 581.)

The objections which criticize the investments as not proper, reasonable or prudent; as being made without regard to the time when objectant would come into ownership of the property, and as being in other respects negligent can be determined only after proof has been taken. For the purpose of this proof the remaining issues have been set for trial before the court on the 20th day of December, 1933, at ten-thirty o'clock A. M. Proceed accordingly.