In the Matter of the Estate of KATHARINA E. FROELICH, Also Known as KATHARINA E. FROLICH and KATHARINA FROEHLICH, Deceased.

Surrogate's Court, Kings County, February 6, 1934.

*Herman Block,* for the trustee.

*Thomas L. J. Corcoran,* for the assignee of *cestui que trust.*

WINGATE, S. The trust estate which is the subject-matter of the present accounting was erected pursuant to a testamentary direction to invest $1,000 for the benefit of Elsie Dunkel, to apply the income for her benefit until she attained the age of twenty-five years, and then to pay her the principal.

This sum came into the hands of the trustee following a decree of this court dated February 13, 1931. After consulting with the *cestui que trust* named in the will, and pursuant to her approval, the trustee invested the principal fund in a five and one-half per cent participation certificate in a first mortgage on an apartment building

at 101-110 Central Park West, New York city, issued by the Prudence Company. The total mortgage of which this participation was a part amounted to $3,500,000, and was guaranteed, principal and interest, by the issuing concern. It was represented to the trustee that a conservative appraisal placed the value of the property at $5,440,000, thereby making it a legal investment for trust funds under the pertinent statutes (Dec. Est. Law, § 111; Pers. Prop. Law, § 21; Dom. Rel. Law, § 85). The verity of these representations is not impeached.

The mortgage did not mature until January 1, 1937, but an agreement was made with the trustee by the Prudence Company in the form of a rider attached to the participation certificate itself, that the certificate would be paid in full at the time of the termination of the trust.

Unfortunately for the trustee, the *cestui que trust*, at the time she purported to assent to the making of this investment, had already assigned her contingently vested remainder interest in the trust to one Max Tatter, who had caused the assignment to be recorded in this court on August 25, 1930. It is not intimated that the trustee ever had any actual knowledge of this assignment prior to August 5, 1933, when the named beneficiary became of age, and demand for payment was made by the assignee. The income in the interval was paid to, and received by, the *cestui* named in the will, who had disposed of her remainder interest alone.

Promptly after receipt of the demand for payment, the trustee requested the Prudence Company to fulfill its contractual obligation to redeem the certificate. This it refused to do, on the sole ground that the moratorium regulations of the State Banking Department forbade such a course at that time.

The trustee has now filed her account showing the possession of the certificate, and the assignee has interposed objections thereto on four grounds, *first*, that the investment in question was unauthorized by law; *second*, that by the terms of the will the trustee is required to pay in cash; *third*, that the investment was unwise and improvident; and *fourth*, that although the accountant was chargeable with notice of the assignment by reason of its record in this court, the assignee was not cited upon the executorial accounting.

In support of his first objection that the investment was non-legal, the assignee cites *King* v. *Talbot* (40 N. Y. 76); *Matter of Blake (Sarah)* (146 Misc. 780) and *Matter of Flint* (148 id. 474.)* If the objector makes a differentiation between an investment which is illegal and one which is improvident, which he apparently does by reason of the inclusion of his third basis of objection, there is nothing either in *King* v. *Talbot* or in *Matter of Blake (Sarah)* to

---

* Revd., 240 App. Div. 217.

sustain his position in the present case. On the contrary, the language of this court in *Matter of Blake (Sarah)* (at p. 782) is directly opposed to his contention.

A " legal " investment is obviously one which is authorized by law and the investment here in question clearly answers the description of those meeting the standard of legislative approval in section 111 of the Decedent Estate Law. Whether or not the inclusion of securities of such a class among investments of trust funds was a prudent exercise of the legislative discretion, is quite beside the point. They were so included and that ends once and for all any controversy as to whether they are " legal." In so far as *Matter of Flint* enunciates a diverse doctrine, this court is compelled to dissent therefrom and to concur in the divergent determinations of Surrogates FOLEY and DELEHANTY in *Matter of Mulford* (149 Misc. 728) and *Matter of Frazer* (150 id. 43). The first objection is, therefore, overruled.

The fourth objection, to the effect that although the executrix was charged with notice of the assignment of the trust remainder, the objector was not cited upon the executorial accounting, is meaningless at this time and in this proceeding, which is an accounting by the trustee who is a legally distinct and diverse person from the executrix. (*McAlpine* v. *Potter*, 126 N. Y. 285, 289; *Johnson* v. *Lawrence*, 95 id. 154, 162; *Matter of Mann*, 145 Misc. 360, 361; *Matter of Ebbets*, 149 id. 260, 265, 267; *Matter of Seitz*, Id. 526, 530.) If, as seems probable, he possessed a right to be cited in the executorial accounting, the decree therein made would not be binding upon him and he may have it opened if it has prejudiced his rights (*Matter of Glass*, 134 Misc. 291, 292, 293), which is not apparent. It furnishes, however, no basis of objection in the present proceeding.

The primary right to the payment of the remainder in cash, which is advanced as the second objection, is unquestionable. In the present instance the natural connotation of the terms of the will itself, with its direction to " pay," implies such an intention on the part of the testatrix, but even in the absence of this or similar language, it cannot be doubted that the same right resides in the remainderman or one succeeding to his interest. (*Villard* v. *Villard*, 219 N. Y. 482, 500; *Camp* v. *Smith*, 49 Hun, 100, 105; affd., 117 N. Y. 354; *Matter of Blake [Sarah]*, 146 Misc. 780, 784.) Whether or not the present inability of the trustee to comply with this obligation renders her subject to surcharge depends, however, wholly upon the question of whether or not her conduct in respect to the investment of the trust fund is legally censurable, or, in other words, whether the third objection of the respondent, alleging

that her acts in this regard were unwise and improvident, is well taken.

In support of this objection, reliance is placed on the two Blake decisions of this court (146 Misc. 776 and 780). The doctrine of these cases is simple, and is merely to the effect that a trustee who invests in legally authorized securities is not thereby absolved from the primary fiduciary duty of exercising in connection with the investment of the trust funds that diligence and prudence which, in general, careful men of discretion are wont to display in their own like affairs. (*King* v. *Talbot*, 40 N. Y. 76, 85; *Matter of McCafferty*, 147 Misc. 179, 198; *Matter of Kruger*, 139 id. 907, 908, 909, and cases cited.)

The application of this rule is familiar. In each case, " the question * * * becomes one essentially of fact, namely, did the executor act in good faith, and did he use that degree of care and diligence which we would expect from one circumstanced as was the executor charged with the execution of a trust." (*Matter of Hurlbut*, 210 App. Div. 456, 458; *Matter of Kruger*, 141 Misc. 475, 476.)

Under the facts disclosed in the *Blake* cases, the court felt constrained to answer this question of fact in the negative respecting certain participation certificates the maturities of which long postdated the known accrual of the trustee's obligation to make payment to the remainderman, and which possessed no market except such as the trustee itself might feel inclined to create for them.

The acts of the trustee in the case at bar were materially different. Whereas the maturity date of the security in which investment was made was approximately two years subsequent to the known date of accrual of her obligation to pay, she did not content herself with this, but secured from a presumably responsible concern a binding and ordinarily enforcible contract to liquidate the security on the date when her obligation would mature. In spite of her precaution in this regard, the certificate remains unpaid. So far as the record in this case demonstrates, however, such non-payment has resulted solely by reason of the intervention of the sovereign power of the State which placed a moratorium upon the enforcement of this contractual right.

It seems obvious, therefore, that the proximate cause of the inability of the trustee to comply with the direction of the will is the intervening prohibition of the State Department of Banks, and for this she is not responsible. (*Matter of Adriance*, 145 Misc. 345, 349.)

In addition to this, however, the court is satisfied that the material acts of the trustee, as disclosed in this connection, complied with

the standards of reasonableness and prudence demanded of all fiduciaries. As a matter of fact, had the assignee seen fit to advise the trustee of his interest in the subject-matter, it is beyond a reasonable doubt that she would have conformed the investment to his wishes as she did to those of the putative beneficiary. It is entirely true that she is legally charged with notice of the assignment, but it is equally unquestionable that as a matter of fact she knew nothing of it, and ninety-nine out of every hundred others in her position would have been equally unaware of it and would have acted in respect to the matter as she did.

The final suggestion, that she demonstrated a lack of prudence in investing the entire fund in a single security, possesses even less merit in the present case than in those in which it is usually advanced. Here the fund was only $1,000, and the division of a sum so small among a number of different investments would approach the ridiculous. In any event, until admitted financial experts can agree among themselves as to the relative merits of diversity and centralization of investment, it would be an act of absurdity for a court professing no peculiar adeptness in such matters to brand one of the opposing schools of thought as right and the other as wrong. (*Matter of Adriance,* 145 Misc. 345, 352.)

All objections to the account are, therefore, overruled.

Proceed accordingly.