In the Matter of the Estate of PETER TURNER, Deceased.

Surrogate's Court, Orange County, June 28, 1935.

*Philip B. Adams*, for the objectant.

*Watts, Oakes & Bright* [*John Bright* of counsel], for the trustee.

TAYLOR, S. Testator by the third paragraph of his will erected a trust of $7,000 and provided that the income therefrom should be paid to his wife during her life and upon her death $4,000 thereof should be paid to his daughter, Harriet S. Youngs, and the trust continued as to the balance in a manner not here important.

The Orange County Trust Company was named trustee. It entered upon its duties as such on November 14, 1928, and in ten days thereafter invested this sum in a guaranteed mortgage certificate, series N-88, of the New York Title and Mortgage Company. This certificate was to become due February 4, 1933, and represented an interest in a single mortgage as distinguished from certificates which are secured by groups of mortgages.

Mary Turner, the testator's wife, died February 9, 1932. The following month the objectant called upon the trustee to inquire about the payment of the $4,000 to her. She was informed that the amount was invested in this mortgage certificate which had another year to run and it was suggested to her that the certificate be not sold at the time. The objectant stated that she was in need of money, whereupon the suggestion was made to her that the trustee would make a loan to her upon her note, secured by her interest in this trust, the note to become due shortly after the due

date of the mortgage certificate. This course was adopted, the objectant executing her note, together with an assignment of her interest in this trust fund as collateral security thereto. The note has been renewed a number of times. The objectant admits that she did not insist upon the payment of the full amount to her, nor even suggest that the security itself be sold.

There are a number of objections, but they may be said to come under two major headings: (1) That the trustee was not authorized by law to invest in this mortgage certificate, and (2) that it was the trustee's duty to dispose of the certificate within a reasonable length of time after Mrs. Turner's death. The market value of the certificate has depreciated quite considerably since the death of Mrs. Turner, and although now past due has not yet been paid as the New York Title and Mortgage Company is in rehabilitation in charge of the Superintendent of Insurance.

With respect to the legality of investments it is contended that a corporate trustee may invest in mortgage participations only in accordance with subdivision 7 of section 188 of the Banking Law. This statute provides that all investments by trust companies acting as testamentary trustees, as well as in other named fiduciary capacities, " shall be at its sole risk," and for all losses of such money the assets of the corporation shall be absolutely liable " unless the investments are such as are proper when made by an *individual* acting as trustee."

The amendment of 1917 (Laws of 1917, chap. 385) to this section of the Banking Law followed upon the decision of *Matter of Union Trust Co. (Hoffman Estate)* (219 N. Y. 514), and the statute codifies the court's suggested requisites for the protection of beneficiaries in this form of investment.

This amendment of that provision of the Banking Law was to enlarge, rather than to limit, the investments of a trust company in a fiduciary capacity. It would be bordering on the ridiculous to provide that a corporate trustee might not have the privilege of diversification of investments accorded an individual fiduciary.

Reaching this conclusion with respect to the intendment of this amendment to the Banking Law, we come to the question whether this guaranteed mortgage certificate is a legal investment, for the testator did not provide in his will that the trustee might invest in non-legals.

Section 21 of the Personal Property Law and section 111 of the Decedent Estate Law, in almost identical language, provide that a trustee may invest estate funds " in bonds and mortgages on unincumbered real property in this state worth fifty percentum more than the amount loaned thereon, *and in shares or parts of*

*such bonds and mortgages,* provided that any share or part of such bond and mortgage so held shall not be subordinated to any other shares or parts thereof and shall not be subject to any prior interest therein, and provided further that bonds and mortgages in shares or parts of which any fiduciary may invest trust funds, together with any guaranties of payment, insurance policies and other instruments and evidences of title relating thereto shall be held for the benefit of such fiduciary and of any other persons interested in such bonds and mortgages by a trust company, a bank authorized to conduct a trust department * * *, or a national bank located in this state and duly authorized to act as a trustee therein and that a certificate setting forth that such corporation holds such instruments for the benefit of such trustee and of any other persons who may be interested in such bonds and mortgages * * * be executed by such corporation and delivered to each person who becomes interested in such bond and mortgage."

The trustee has offered in evidence the certificate of the depositary that the mortgage guarantee policy, insurance policies, etc., have been deposited with and are held by it in its trust department.

There are numerous authorities holding that mortgage certificates of the same nature as the one here are legal investments. (*Matter of Froelich,* 150 Misc. 371; *Matter of Jacobs,* 152 id. 139; *Matter of Alexander,* Id. 354; *Matter of Nix,* 154 id. 61; *Matter of Gilford,* 155 id. 339; *Matter of DeWinter,* 154 id. 50; *Matter of Balfe,* 152 id. 739; affd., 245 App. Div. 22.)

It may also be said in connection with this objection that the burden of proof so far as the legality of the investment is dependent upon the facts of title, value of the mortgaged property, percentage of mortgage to such value, the general nature of the mortgaged property, etc., is upon the objectant. (*Matter of Winburn,* 140 Misc. 18; *Matter of Adriance,* 145 id. 345; *Matter of Wilson,* 127 id. 518.)

There is no proof on the part of the objectant that this investment in these respects does not comply with the statute and the other requirements laid down by the cases.

Having determined that the trustee was not limited to mortgage participations as described in the Banking Law, it follows that the cases of *Matter of Peene* (155 Misc. 155) and *Matter of Jones* (Id. 315) are not pertinent.

It is further contended that the certificate in question was not a legal investment for the reason that it provided that the New York Title and Mortgage Company may at any time in its discretion waive any condition or provision in the mortgage, postpone, extend or waive the payment of any installment of principal, and accept

payment of principal and interest before maturity, which provision came under condemnation in *Matter of Allen* (142 Misc. 113). The clause to which objection is made provides that nothing contained in the certificate shall relieve the company from paying the same in accordance with the terms thereof, and if payment of principal is received before maturity the amount due on the particular certificate with three months' interest from the date of such payment shall either be paid to the holder as soon as received, or deposited by the company to the credit of the holder. It may be very seriously doubted that this clause would permit the New York Title and Mortgage Company to in any way impair the security of the certificate holder, but aside from that it appears that at a time when the certificate was worth par in the market this clause was eliminated and thereby was converted into a legal if it had theretofore been an illegal investment. (*Matter of Adriance*, 145 Misc. 345; *Matter of Frazer*, 150 id. 43.)

No claim can be successfully put forth that it is negligence for a fiduciary to invest in a security maturing beyond the date when the turning over of the funds was required. (*Matter of Flint*, 240 App. Div. 217; affd., 266 N. Y. 607; *Matter of Frazer*, 150 Misc. 43; *Matter of DeWinter*, 154 id. 50.)

Were it not that the beneficiary acquiesced in the retention of this certificate after her mother's death, I should be inclined to hold that it was the duty of the trustee to sell said certificate within a reasonable length of time thereafter. (*Matter of Jacobs*, 152 Misc. 139.)

Comment has already been made upon the evidence in the case from which I find as a fact that when the beneficiary became entitled to the $4,000 she acquiesced in the trustee continuing to hold this security and waived her right to require it to be then sold. In reaching this conclusion I followed the rule that " a waiver is the voluntary abandonment or relinquishment by a party of some right or advantage." (*Fisher* v. *United States Casualty Co.*, 138 Misc. 307, 309; *Draper* v. *Oswego Co. Fire Relief Assn.*, 190 N. Y. 12, 16.) "A waiver takes place where a man dispenses with the performance of something which he has a right to exact." (*Coon* v. *Campbell*, 138 Misc. 567, 571.) " It is likewise true that a *cestui que trust* cannot allege an act upon the part of his trustee to be a breach of trust which has been done under his sanction or procurement or concurrence." (*Ungrich* v. *Ungrich*, 131 App. Div. 24, 29.) "A waiver is a voluntary relinquishment of some right. It implies an election of the party to dispense with some advantage which he might, at his option, have demanded or insisted upon." (*Cowenhoven* v. *Ball*, 118 N. Y. 231, 234.)

Having entered into the arrangement by which she was lent money upon the certificate instead of obtaining the amount which was due her, or so much of it as could then be obtained through a sale of the security, " not having spoken when he ought he will not be permitted to speak when he would." (BROWN, J., in *Cowenhoven* v. *Ball*, 118 N. Y. 231, 234.)

In *Matter of Jarvis* (110 Misc. 5, 15) it appears that the beneficiary was consulted, had knowledge of and gave approval to the purchase of certain securities and it was held that by reason thereof she could not thereafter complain of the particular investment.

In *Matter of Packard* (146 Misc. 65, 68) it was said that " the silence of the remaindermen during the long period of the administration of the trusts, the failure to inquire into or object to the non-legal investments made, and the accord of the remaindermen in the mortgage participation, as evidenced by the letters quoted, established complete acquiescence on the part of the remaindermen in the mortgage participation investment and the retention thereof."

In *Matter of Kent* (146 Misc. 155, 161) it was found as a fact that two residuary legatees not only consented but requested the retention of certain stock and it was held that they were estopped by their conduct to question the resulting loss.

This quotation from *Matter of Chaves* (143 Misc. 868, 871; affd., 239 App. Div. 900) is quite pertinent here, " it would indeed be a harsh rule which would compel a surcharge against the widow here * * * where acquiescence by the objectant for the greater part of the time of retention is plainly proven, where a period of less than a month elapsed after acquiescence had ceased and where the loss was caused by world-wide conditions incident to the present financial depression. The precedents applicable to such a situation impose no such unreasonable test of the conduct of a fiduciary."

Here the beneficiary electing to approve the retention of the certificate after she was legally entitled to require its sale, prevents her from now taking a contrary position. (Bogert Trusts & Trustees, 542, § 126.)

Viewed in retrospect we can now say no more than that the " failure to sell was a misfortune, not a wrong." (*Matter of Garvin*, 256 N. Y. 518, 520.)

The objections are dismissed.

Settle decree on five days' notice or by consent.